Case number 24-50237. EB5 Holdings Inc. et al. Appellants v. Joseph Edlow, Director, United States Citizenship and Immigration Services. Mr. Banas for the appellants. Mr. Banas, good morning. Good morning, Your Honors, and may it please the Court. My name is Brad Banas. I represent the appellants in this case. In 2022, Congress reauthorized the EB5 Regional Center Program, and it created an annual fee. It applied that fee to, quote, each regional center designated under subparagraph E, end quote, of that new law. USCIS quickly interpreted that to apply to all regional centers, like my clients who have existed as regional centers since 2014 and 2015. By interpreting each to mean all, both USCIS and the lower court created a reversible error, and this court should reverse the lower court's decision and remand with instructions to enter judgment in favor of the appellants. This case comes down to a basic statutory interpretation. What does each regional center designated under subparagraph E actually mean? And we would suggest that it ends at the plain text. Each, meaning singular, specific, regional center designated under, that would approved pursuant to subparagraph E, which is the statute that came out in 2022. Our clients, there's no dispute, were designated under the law that was originally created in 1992. The language of designation was added in 2002 and 2003, so they were designated by the Department of Homeland Security under that law, not subparagraph E of 2022 law that came out after they had been designated. Wasn't that law repealed? Your Honor, it was repealed and relocated is how the Bering Court in the Northern District of California rephrases it, and I would suggest that it was reauthorized. This statute has a 30-year history of reauthorization. The 1992 regional center statute was actually passed as part of an appropriations bill. But under, I mean, if the regional, legacy regional centers are still, you know, viable or still, you know, valid regional centers, then don't they have to be effectively or implicitly designated under E? No, Your Honor. Because that's the only way you can be a designated regional center under the current law. I think there's a distinction between authorized and designated. I would suggest that subparagraph E certainly authorizes the program, but they were designated under a prior law. And that designation, there's no dispute. That designation was in place before 2022, at the moment of passage of 2022, and after 2022. So if we were to agree with you, though, we would create a circuit split with the 11th Circuit? Your Honor, it's an interesting... Is there a way to distinguish the 11th Circuit's decision? Your Honor, the 11th Circuit's interpretation, I think, violates a lot of canons of statutory interpretation. There's also an interesting question that all of these decisions related to EB-5 are made here in the district. And so, this court's decision would effectively bind USCIS, because all of these are made at the thing called the Immigrant Investor Program Office, which is up on M Street, not too far from here. And so, anyone who was aggrieved could come to this district and sue, because that's where the decisions are being made. I just think the 11th Circuit decision, which is another one of my cases, Your Honor, they avoid the most clear statutory interpretation techniques that have been time-tested, and that is disparate words mean disparate things. And somehow interpreting each regional center to mean all regional centers simply doesn't pass the first canon of statutory interpretation. I think they got caught up a lot, Your Honor, on why. Why would this policy make any sense? And my initial claim would be that the court's not supposed to look at policy, it's supposed to look at the statute. But I do want to answer that question. And look at purpose, however. Purpose. Yes, Your Honor. I'm sorry, Judge Rodgers. I do think that it's pretty clear that nothing in this statute requires my clients to get, quote, re-designated. They were designated before, they remain designated. And this isn't apparent from the statute, but there are a lot of regional centers, including ones that my client owns, who are dormant now. That is, they got designated in the 20 teams, they brought in investors, they finished the deal, and they're not seeking to pursue any more benefits under this statute. They are waiting for visa numbers to become available, and essentially the projects, the new commercial enterprises, have fulfilled their purpose and they're done. They're not out pursuing new investors. They're not out there being active. And so they were designated under the prior law. They are not required to seek designation under the new law. And so they should not have to pay for this fee if they're not participating in the program. Do you attribute any significance to the fact that Congress acted by way of an appropriation? I do not, Your Honor. With a sunset date? Your Honor, this program's always had a sunset date since 1992. So the clients were designated until the date set in the statute, right, in the Appropriations Act. Your Honor, the sunset date goes to the authorization of the program, not the designation of the particular business that's acting as a regional center. I don't want to play word games here, but you responded to Judge Henderson's question by saying that the statute was repealed, and you said relocated. And since we can look at the plain text of the statute and the purpose, the notion that Congress acted to get rid of graft and corruption, among other things, suggests that it wanted to start the program anew. There's nothing to suggest that Congress intended the graft and corruption to continue. I agree, Your Honor. And we're not suggesting, I don't think our position would further graft and corruption. I don't know how Congress can do anything under your interpretation. Once you're designated, even hypothetically, were you representing a center that's been shown to be involved in graft and corruption? There's other provisions where they can be terminated. The designation can be terminated, and we're not disputing that. So you don't think that when Congress authorizes centering until fiscal year whatever, that at that time the authorization expires by operation of law? No, Your Honor. Why not? Isn't that what Congress does every day? Your Honor, the sunset dates go to the authorization for the program. I understand that. So if there's no program... Well, Your Honor, for 30 years... Because since then, there have been these appropriation acts. I mean, Congress could have acted a different way, but it didn't. That's right, Congress didn't. So there is some significance that the court can attribute to the that it acts by appropriation act with sunset dates as opposed to enacting a permanent piece of legislation. Is that correct? If there is, Your Honor. I don't think it impacts this question. If there is, it certainly does. That's what I'm trying to get. Your notion is that once you're designated, you're designated for life. And it's up to the senators whether they want to operate and whether they want to attract investors or not. And there's nothing Congress can do about it. Your Honor, the agency's never interpreted lapses in authorization to lead to de-designation. If that footnote... If that's true, then did Congress waste its time all when it enacted... Senator Grassley and Senator Leahy got together on this reform bill? I don't think it wasted its time, no, Your Honor. It reauthorized the program and it codified a lot of practices that were already in the regulations related to integrity measures. And it still... Congress chose to use this to do many different things. So your clients don't want to pay the fee that's designed to fund the things Congress thought were necessary to eliminate graft and corruption? My clients who are not pursuing any benefits under the new statute do not think that Congress wants them to pay the fee. That's correct. My dormant regional centers that are simply waiting for visa numbers to become available for their investors who are making no money, who are taking in no funds, the project is completely done and they are pursuing no additional investors under this measure. So they cannot... If they want... Your Honor, that's correct. And if they did, they would likely seek re-designation and fall under this paragraph. Why? You say they have. They've been designated and their designation has not been, what, repealed. Because it's a marketing thing, Your Honor. This is a competitive market. And to go and sell to investors, you have to show you have a new designation. So you're saying, though, for the dormant centers that you would be seeking reauthorization if they were to become active. So then why not just allow the designation to terminate and not pay the fee, right? So failure to pay the fee will result in termination of the designation. Because then the investors won't get their visas. It'll lead to liability concerns and everyone will get sued and we'll be right back here. Then you're just... Your position is that while they're not actively investing, they shouldn't have to pay the fee. But that's not reflected anywhere in the statute. If a regional center wants to benefit from its designation for marketing or any other purpose, then it pays the fee. Your Honor, this doesn't require anyone to get re-designated. We've been designated. We've stopped... But you just said in response to Judge Rogers that if you were to become active again, that you would probably seek designation under subparagraph E. And I think that's consistent with congressional intent. If you want to participate, you pay the fee. If you don't want to participate, you've been previously designated, you don't fall into the fee. And that's why it's each regional center designated under subparagraph E, not all regional centers in existence. Thank you, Your Honor. I'm happy to answer any other questions, but I see I'm over my time. All right. Thank you, Your Honor. Ms. McTagg? May it please the Court, Alexandra McTagg for the government. This Court should affirm the District Court's decision, which is consistent with a recent decision from the 11th Circuit, that the integrity fund fee of the Reform and Integrity Act applies to all regional centers, not just those designated after the law took effect. The RIA was designed to curb fraud and abuse in the regional center program, which was rampant. It repealed the prior law, enacted the new law, and imposed certain reform and integrity measures. And those measures were to be funded by the integrity fee that applies to each regional center. Before the Court is a question of statutory interpretation. What does it mean for the integrity fund fee of subparagraph J to apply to each regional center designated under subparagraph E? The government contends that based on the language, structure, and purpose of the statute, it applies to all of the regional centers in the program, whereas you heard the appellants contend that it only applies to new regional centers designated after the law took effect. But the District Court agreed with the government, as did the 11th Circuit in Sunshine State v. USCIS. The fee provision in subparagraph J sets forth two fees that apply to each regional center. One, a lesser fee for smaller regional centers of $10,000, $20,000 for their larger regional centers. Now, appellants contend that there is meaning in the word each. But looking at subparagraph J, what that says is that the fee, the particular fee, applies to each regional center. It's not $10,000 for the aggregate of the regional center. So it's really just a grammatical way to indicate that it is an individual fee per regional center. But what's important in subparagraph J is that there's no specific clear language exempting legacy regional centers. And there's no time constraint on when this particular designation had to occur. Let me ask you about the word legacy. They were, they're not anything. I mean, it's a misnomer. Once it was repealed, they didn't get any sort of a legacy status. So the law doesn't have any legacy term. And that's, it's a shorthand that we've been using to indicate regional centers that existed before the 2022 law and regional centers that existed after. The Bering Court said that the regional centers from the prior law continued in the new law. And as part of that case and a settlement, USCIS agreed to continue that designation through. So the position of the government is that based on the Bering decision, the regional centers that were designated under the prior law continued as part of the new law. The old law was repealed and relocated into 1153 B-5. And the designation, the prior designation continued under that law under subparagraph E. And so there's no specific exemption for these so-called legacy regional centers. There's no limitation on the time period of when this designation occurs. And Appellant's argument is facially appealing. They couldn't have been designated under subparagraph E because it didn't exist when they were designated. And so based on that, it might appear that subparagraph E is a method to designate regional centers, but it's not. Subparagraph E is the regional center that is where Congress relocated it after it repealed the prior law. And you can tell that from the overall structure of the statute. Subparagraph E is titled regional center program. And the district court correctly held that it is comprehensive in scope. And for example, it talks about applications to become a regional center and the record keeping requirements. And this provision about not being a convicted felon, that's new also, isn't it? It is. There are certain under subparagraph H, there are certain requirements for the individuals involved in the regional center, including that they can't have been engaged in certain drug trafficking crimes or have ties to foreign governments or have engaged in espionage. And those types of reporting requirements are contained within the statute and have to be part of the annual reports that are submitted under subparagraph G. And so in looking at subparagraph J refers back to subparagraph E. Subparagraph E, RomeNet 1, talks about regional centers, which has been designated by the Secretary of Homeland Security. And as the 11th Circuit held, has been designated, has no set time period. So the designation under subparagraph E and the fee under subparagraph J, in neither place did Congress impose some sort of time period on when that had to occur. Now, there are places in the statute where it talks about new regional centers, and that would be subparagraph E, RomeNet 3, which is the establishment of a regional center. That shows how to create a regional center after the new law was enacted. And as the District Court and the 11th Circuit both held, if Congress had wanted to limit the fee to only those regional centers that were new, it could have done so by referring to paragraph E, RomeNet 3. But it didn't. There were any number of ways Congress could have limited the fee provision to only new regional centers, and it just didn't do that. And so the government's position is, it's clear from the face of that language that it's not so limited. It applies to regional centers that are under the law. Well, I think under USCIS's original position, all regional centers would have had to be re-designated, and it was only after the Bering Settlement that legacy regional centers were allowed not to be re-designated under subparagraph E. Correct. Right. And so the government's position is that in accordance with that, the designation carried forward. And designation was a concept that was in the 2002 law. 2002 said the pilot program, quote, shall involve a regional center designated by the Attorney General on the basis of a general proposal. And that language is very similar to what carried through to the 2022 law, which said the regional center has been designated by the Secretary of Homeland Security. So help me just understand the practicality of what's happening. I have a regional center. I was designated under the old law. I made my investments, I did my work, and now I'm dormant, and I'm just sitting there. What am I, in fact, what benefit am I getting from my designation under those circumstances? So the designation allows them to continue in the regional center program, which means, one, they could invest in new enterprises if they so chose. And is that a decision they can make independently? In other words, I have a center. It's dormant. In my center, I have in mind a physical structure, not simply a computer program. So it's empty. It's just sitting there. And I'm probably paying property taxes on it. But I'm not doing anything with it that's relevant to the program. I'm not getting investments. I'm not bringing non-citizens into the country with the idea that it's become lawful. So I have this building that's empty. And the fee is to, but very generally, you know, avoid grafted corruption and all these new requirements. But how does that have anything to do with my empty structure? And council tells us that, well, if they were to get new investments or be interested in getting new investments or bring non-citizen country, they would get re-designated. Well, Your Honor, they're still continuing so that their investors can file their petitions and ultimately get their visas, right? So they don't want to close their doors. So I'm not closed in the sense of an empty building? I mean, you're not closed in the sense that the investments are still in the regional center or the investors are still waiting for their visas. That's not a physical concept. I bring, you know, a hundred million dollars into the country. And I also bring in some non-citizens. And there are 500 of them. And they've all been processed through the system. And they're either citizens or they have green cards or whatever. But right now I have this empty facility. It was designated under the old laws. I'm not seeking any investments. I'm not bringing anyone into the country to be a part of this program. I'm just paying state property tax. But I think the point, Your Honor, is that the law doesn't exempt that particular scenario. The law doesn't exempt any scenario. Well, the argument is that the only reasonable way to read the statute is Congress could not have intended that my empty building have to pay this fee in order to avoid graft and corruption. Because I'm not doing anything with it. It's just sitting there. What's the best response to that? Isn't that the argument we're being presented with? That if I were to become active, then I'd seek redesignation. I just have a structure. There's nothing going on. No investments, no people. I think the argument, Your Honor, is that Congress didn't parse it that because they required annual reports from everyone designated under subparagraph E, and they required a fee. All of that goes to the graft and corruption that pertain to the prior regional centers of which these are. There's no way to get out from under this fee, even if all I have is an empty building. Not as long as the investors are active in that regional center waiting for their visas, no. I don't see that qualification in the law. There's no qualification in the law, right? There's no qualification. It applies to all of the regional centers. You just added some language that isn't in the fee provision. Because if the regional center closed down and was gone, then they wouldn't be paying a fee anymore. And that's what would have to happen to get out of the fee provision because the fee to everybody. There is no limitation. An empty building where there are no investments and there are no people being brought in. Well, there's money invested in it by the investors, but yes. The investments have all been used up. I've made the investments. I've brought in these people. The deal has been made with the United States government under this statute. Yes, under that, yes, the fee is still owed. So, I'm unenacted. I mean, the interesting thing to me, candidly, about this case is the argument is by the appellants is they shouldn't be subject to the fee. But on the other hand, they want to be able to reacquire, get new investments. I'm just not clear how this works. I understand what Congress had in mind, that there's a lot of graft and corruption. It wanted to tighten up the system. I understand your question, Your Honor. And again, I think the government's position is that there is no limitation on the nature of when the regional center had to be designated. And if they want to maintain their designation under the law, then they have to pay the fee. Thank you. Are there no further questions? Marsha, one minute. Thank you, Your Honors. Judge Rogers, I just want to address your point. This is what Bering dealt with and begged the agency to engage in rulemaking to determine who needed to be designated, how they needed to be designated. And the injunction lasted until they granted summary judgment or the agency engaged in notice and comment rulemaking. The agency simply hasn't. The EB-5 program has been regulated by memo and policy statements essentially since 1992. That's when the last regulations came out. There was a set in 2018 that were set aside for an appointments clause issue, but this is the big question. Wasn't there a settlement? Did the settlement require there to also be rulemaking? The settlement did not, Your Honor, but the injunction did. And it's my understanding the agency is going to engage in rulemaking sometime in November under a different case. But right now, that's the real question, because Judge Rogers' point is the statute doesn't address any of this. And our point is under the canons of statutory interpretation that are time-tested. The answer here is simple. Each regional center designated under subparagraph E does not include regional centers like my clients. Thank you, Your Honors.
judges: Henderson; Rao; Rogers